STATE OF MICHIGAN

IN THE 31ST CIRCUIT COURT FOR ST CLAIR COUNTY

TRAY SMITH
Individually and on behalf of
INTERFAITH COMMUNITY CHURCH
d/b/a FAITH CHRISTIAN COMMUNITY CHURCH
    A Michigan nonprofit corporation
    **Plaintiffs**

Case No. 2023-001779-NZ

v.

Hon. Michael West

CECILE SHOULDERS
LORI A MALCOLM
CHRISTINA BADGER
ST CLAIR COUNTY COMMUNITY MENTAL
HEALTH
    **Defendants**

| | |
|---|---|
| Jeffrey Z. Dworin (P53481)<br>Co-counsel for Plaintiff<br>7125 Orchard Lake Rd – Ste 306<br>West Bloomfield MI 48322<br>248-322-9900<br>dworinlaw@comcast.net | Gary A Fletcher (P26823)<br>Taylor M Wells (P8538)<br>Fletcher Fealko Shoudy & Francis PC<br>Attorneys for Defendant St Clair County<br>Community Mental Health<br>1411 Third St – Ste F<br>Port Huron MI 48060<br>810-987-8444<br>gfletcher@fletcherfealko.com |
| Gerrow D Mason (P59065)<br>Gerry Mason Law Offices PLLC<br>Co-counsel for Plaintiff<br>1700 Busha Hwy<br>Marysville MI 48040<br>810-989-0057<br>gdblues@yahoo.com | |

### 1ST AMENDED COMPLAINT

Plaintiff states his 1st Amended Complaint as follows:

### PARTIES

1

Exhibit 3 to Objection to Removal and Motion to Remand

1. Plaintiff Tray Smith is an individual residing in the City of Port Huron, St Clair County, Michigan.

2. Plaintiff Interfaith Community Church – Port Huron is a Michigan nonprofit ecclesiastical corporation with its principal location in Port Huron, St Clair County, Michigan.

3. Plaintiff Interfaith Community Church – Port Huron operates under the assumed name Faith Community Christian Church (the "Church").

4. The Church filed Articles of Association on October 20, 1971. **Exhibit 1.**

5. The Church amended its articles on June 21, 2000, **Exhibit 2.**

6. The Church adopted a governing Constitution on January 27, 2004, **Exhibit 3.**

7. Plaintiff Smith is the Senior Pastor of the Church.

8. Pursuant to the Church's Constitution the Senior Pastor is the Chief Executive officer of the Church (**Exhibit3**, Art IV, Section 1, B),

9. Defendant Cecile Shoulders ("Shoulders") is an individual residing in Port Huron, St Clair County Michigan.

10. Defendant Lori A Malcom is an individual residing in Port Huron, St Clair County MI.

11. Defendant Christina Badger is an individual residing in Port Huron, St Clair County MI.

12. Defendant St Clair County Community Mental Health ("CMH") is an agency of St Clair County.

## JURISDICTION AND VENUE

13. Jurisdiction is proper in this Honorable Court because:

2

Exhibit 3 to Objection to Removal and Motion to Remand

    a.  The transactions and events giving rise to this civil action occurred in St Clair County

    b.  Equitable relief is sought within the jurisdiction of this Court.

    c.  A declaratory judgment is sought within the jurisdiction of the Court.

14.  Venue is proper in this Honorable Court because

    a.  All Defendants reside in St Clair County.

    b.  Plaintiff resides in St  Clair County.

    c.  The equitable relief sought is to be enforced within St Clair County.

## FACTS

15.  Plaintiff Smith is the Senior Pastor of the Church.

16.  The Constitution provides that the Senior Pastor is the chief executive officer of the Church (**Exhibit 1, Article IV Sec 1(b)**.

17.  Plaintiff Smith is a director of the Church (**Exhibit 4, Annual Update**).

18.  The Church owns and occupies property described as:

W 320 FT OF E 670 FT OF THAT PART OF OUTLOT B LYING S OF S

LINE OF CLEVELANDAVE & LOTS 112,

113 & 114 EX E 350 FT ASSESSOR'S MILITARY ST 3

ID#      74-06-151-0017-000

Commonly known as 1640 Cleveland Ave, Port Huron MI 48060

(the Property).

19.  The Property includes a 10,000 square foot church building.

20.  The Church purchased the Property in 2005 for $400,000.

21.  The Church has owned and occupied the Property since 2005.

3

Exhibit 3 to Objection to Removal and Motion to Remand

22. Defendant Shoulders is a Trustee of the Church.

23. Defendants Malcolm and Badger are former members of the Church.

24. CMH owns property proximate to the Property.

25. CMH has long sought to acquire the Property.

26. Prior to the events giving rise to this civil action, CMH was given notice that the Church was not for sale (**Exhibit 6, affidavits**).

27. Nevertheless, CMH entered into a purchase contract with the individual defendants for purchase of the Property (**Exhibit 5, the Contract**).

28. Prior to entering into the Contract CMH was advised that the individuals purporting to sell the property were not authorized to do so (**Exhibit 6**).

29. CMH worked with the individual defendants to avoid the Church's Constitution to acquire the Property.

30. On or about August 22, 2023, Defendant Shoulders called a number of members to a meeting without following the constitutional guidelines.

31. Most of the individuals called were not members in good standing.

32. Only members in good standing are allowed to vote at Church meetings.

33. The members who were not in good standing voted to sell the Property to CMH for $500,000 (**Exhibit 5**).

34. The Church does not need to sell the Property.

35. Price and/or value were not investigated.

36. No comparable properties were checked.

37. The terms of the Contract were not discussed.

38. The contract price was significantly below the value of the Property.

4

Exhibit 3 to Objection to Removal and Motion to Remand

39.  The Contract required that the Church vacate the Property immediately upon closing.

40.  The purported vote was not proper.

41.  The vote was contrary to the Constitution and Bylaws.

    a.  The majority of members who voted for the sale were not allowed to vote because they were not in good standing, **Exhibit 3**.

    b.  The directors had not agreed on the sale.

    c.  The Chief Executive Officer was against the sale.

    d.  The meeting was not properly noticed.

42.  At the Church's quarterly meeting the members in good standing voted not to ratify the Purchase Agreement (**Exhibit 7**).

43.  The individual defendants were removed from the Church.

44.  The Property constitutes virtually all of the Church's assets.

45.  There is no replacement property available.

46.  If the Property is sold the Church will cease to function.

47.  Damages will be irreparable.

48.  The damages could not be quantified.

49.  There is no damage to Defendants if the Property is not sold.

## COUNT I – INJUNCTIVE RELIEF TO PREVENT THE SALE

50.  Plaintiffs incorporate previous paragraphs by reference as though specifically restated herein.

51.  The sale is contrary to the Church's constitution and bylaws.

52.  The sale is not within Defendants' authority.

Exhibit 3 to Objection to Removal and Motion to Remand

53. Plaintiffs will be irreparably damaged if the sale is allowed to go through.

54. Defendants will not be damaged if the sale is or delayed postponed.

55. Public policy favors keeping the Property as a church.

56. The matter does not involve interference by the court in canonical or ecclesiastical matters.

57. Enforcement will not require excessive involvement by the Court.

WHEREFORE, Plaintiff prays that this Honorable Court enjoin Defendants from continuing with the planned sale until the Court can properly review the matter.

## COUNT II – DECLARATORY JUDGMENT

58. Plaintiffs incorporate previous paragraphs by reference as though specifically restated herein.

59. Plaintiffs seek relief under the Declaratory Judgments Act of Michigan (Act No. 150, P. A. 1919) and other applicable law.

60. Plaintiffs seek a declaratory judgment holding that the sale has not been as required by the Church Constitution, and is, therefore, void.

WHEREFORE Plaintiff prays that this Honorable Court issue a declaratory judgment providing that the proposed sale is contrary to the Church's Articles of Association and Constitution.

## COUNT III – NOTICE OF LIS PENDENS

Pursuant to MCL 600.2701 Notice of Lis Pendens, Exhibit 3, has been contemporaneously recorded with the St Clair County Register of Deeds.

6

Exhibit 3 to Objection to Removal and Motion to Remand

October 12, 2023                    Respectfully submitted:

                                    /s/ *Jeffrey Z Dworin*
                                    Jeffrey Z. Dworin (P53481)
                                    Attorney for Plaintiff
                                    7125 Orchard Lake Rd – Ste 306
                                    West Bloomfield MI 48322
                                    248-322-9900

7

Exhibit 3 to Objection to Removal and Motion to Remand

**EXHIBITS**

1. Articles of Association.

2. Amended articles of Association.

3. Constitution.

4. Annual Update

5. Purchase Agreement.

6. Sworn affidavits of Pastor Tray Smith and Treasurer Lori Johnson.

7. Record of Membership Meeting

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 1

## ARTICLES OF ASSOCI

EXHIBIT 1

Exhibit 3 to Objection to Removal and Motion to Remand

C-2000 (Rev. 3-70)

## MICHIGAN DEPARTMENT OF TREASURY
### CORPORATION DIVISION
### LANSING, MICHIGAN

| DO NOT WRITE IN SPACE BELOW — FOR DEPARTMENT USE | | |
|---|---|---|
| <u>NOTE</u><br><br>Mail ONE signed and acknowledged copy to:<br><br>Michigan Department of Treasury<br>Corporation Division<br>P.O. Drawer C<br>Lansing, Michigan 48904<br><br>Fee $20.00<br>(Make fee payable to<br>State of Michigan) | Date Received:<br><br>OCT 18 1971 | **FILED**<br>Michigan Department of Treasury<br><br>OCT 20 1971<br><br>*Allison Green*<br>STATE TREASURER |

### {ECCLESIASTICAL CORPORATION}

# ARTICLES OF ASSOCIATION

We, the undersigned, desiring to become incorporated under the provisions of Act No. 327, P.A. 1931, as amended, do hereby make, execute and adopt the following articles of association, to-wit:

First, The name assumed by this corporation and by which it shall be known in law, is

<u>INTER-FAITH COMMUNITY Church - PonT HURON</u>
(Please type or print corporate name)

Second, The location of said church or society shall be in the <u>CITY</u> of <u>PonT HURON</u>,
(City or Village)          (Name of City or Village)

county of <u>ST. CLAIR</u>, and state of Michigan. The location and post office address of the first

registered office is <u>3035 - 24TH PonT HURON, ~~MICHIGAN~~</u>  St. Clair
(No. and Street)                    (City)              (County)

Michigan <u>48060</u>. The name of the first resident agent is <u>EARL D ShouldeES, JR.</u>
(Zip Code)

Third, The time for which said corporation shall be created shall be perpetual.
(If term is for a limited number of years, then state the number of years instead of perpetual)

Fourth, The members of said church or society shall worship and labor together according to the discipline,

rules and usage of the <u>INTER-FAITH Community - PonT HURON</u> church in the United

States of America (or other jurisdiction as the case may be), as from time to time authorized and declared by

the <u>None</u>
(Here insert the name of the higher ecclesiastical body or bodies, if any, authorized to determine such question)

Fifth (here insert any desired additional provisions authorized by the Act).

_____

_____

_____

_____

{Continued on the reverse side}

Exhibit 3 to Objection to Removal and Motion to Remand

(Additional provisions continued)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

In witness whereof, we, the parties hereby associating for the purpose of giving legal effect to these articles, hereunto sign our names and places of residence:

Done at the _City_ of _Po.T Huron_ county of _ST. CLAIR_ and state of
(City or Village)   (Name of City or Village)

Michigan, this _11TH_ day of _OcTcbec_, 19 _71_.

| (Signatures) | (No.) | (St. set) | (City) | (State) |
|---|---|---|---|---|
| Earl O Shoulders Jr. | 3035 24Th ST. | Po.T Huron | mich 48060 |
| | 5615 Moak St Prt Huron Mich | 48060 |
| Gennis R. Stanley Sr. | 1644 Much Rd - Pt Huron. |
| Coleman Floyd | 2620 - 24th St Pt Huron |
| Brent W. Bocke | 2910 - 22nd St. Port Huron, Mich |
| Lucille Strauss | 2512 Kern St. Port Huron, Mich. |

_____

STATE OF MICHIGAN }
                            } ss.
County of _St. Clair_ }

On This _11th_ day of _October_, 19 _71_ before me personally appeared *
_Earl W. Shoulders Jr. Pierce E. Heard, James R. Stanley Sr._
_Coleman Floyd, Brent W. Bocke, Lucille Strauss_

to me known to be the persons described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

*All parties signing should appear before the Notary.

_James R. Johnson_
(Signature of Notary)

_JAMES R. JOHNSON_
(Print or type name of Notary)

Notary Public for _St. Clair_ County,
State of Michigan.

My commission expires _January 16, 1973_
(Notarial seal required if acknowledgment taken out of State)

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 2

# AMENDED ARTICLES OF ASSOCIATION

EXHIBIT 2

Exhibit 3 to Objection to Removal and Motion to Remand

C&S 516 (Rev. 8/95)

**MICHIGAN DEPARTMENT OF CONSUMER**
CORPORATION, SECURITIES AND LAND

978D#2B60   0602   DRG&FI   $10.00

B970#BB35   0623   DRG&FI   $10.00

Date Received
JUN 2 3 1997

Name
Malcolm V. Floyd
Address
1530 Pine Grove Avenue, Suite 5
City                State        Zip Code
Port Huron          MI           48060

↳ Document will be returned to the name and address you enter above ↰

**FILED**

JUN 2 4 1997

Administrator
MI DEPARTMENT OF CONSUMER & INDUSTRY SERVICES
CORPORATION, SECURITIES & LAND DEVELOPMENT BUREAU
EFFECTIVE DATE

## CERTIFICATE OF AMENDMENT TO THE ARTICLES OF INCORPORATION
### For use by Ecclesiastical Corporations
(Please read information and instructions on the last page)

Pursuant to the provisions of Act 327, Public Acts of 1931, the undersigned person(s) execute the following Certificate:

1. The present name of the corporation is:

   Interfaith Community Church - PORT HURON

2. The identification number assigned by the Bureau is:     740-120

3. The location of the registered office is:

   1923 23rd Street, Port Huron          , Michigan 48060
   (STREET ADDRESS)                        (CITY)        (ZIP CODE)

4. Article S V,VI, VII and VIII of the Articles of Incorporation are hereby amended added to read as follows: (Any article being amended is required to be set forth in its entirety.)

   See Attached

5. The necessary number of members as required by statute voted in favor of the amendment at a meeting held on the

   6th              day of     April              , 19 97 .

6. The following is a copy of the Call for the Meeting:

   (The call notifying the members of the meeting should be copied here, using the wording as it appeared in the church bulletin, paper, notice, or as it was announced from the pulpit. Minutes of the meeting are not required.)

   Attention Members of the Interfaith Community Church, following morning service there will be a brief meeting to ammend the Articles Of Incorporation of the Church.

Exhibit 3 to Objection to Removal and Motion to Remand

7. The number of members present at such meeting: _____ 58

8. The number of members voting in favor of the amendment: _____ 58

Signed this __9th__ day of __June__ , 19 _97_ by the person(s) controlling the temporal affairs:

Cecile  E.  Shoulders, Chairperson
Interfaith Community Church
Board of Trustees

All signatures must be notarized. Attach separate notarizations if necessary.

State of _____ Michigan

County of _____ St. Clair          } ss.

Subscribed and sworn to before me this _____ 9th _____ day of _____ June _____ , 19 _97_ ,

by _____ Cecile  E.  Shoulders _____
          (All persons signing must appear before the notary. List names here:)

Malcolm V. Floyd
(Type or Print Name of Notary)

Notary Public for_____ St. Clair _____ County,

State of _____ Michigan

My commission expires _6/21/2000_

(Notary Seal)

Exhibit 3 to Objection to Removal and Motion to Remand

## AMENDMENTS TO THE ARTICLES OF ASSOCIATION OF
## THE INTER-FAITH COMMUNITY CHURCH

### ARTICLE V.

The purposes for which the Interfaith Community Church is organized are:

A.    To operate exclusively for the purposes set forth in Section 501(c)(3) of the Internal Revenue Code, as amended (the "Code"), including for such purposes the making of distributions to organizations and individuals that qualify as exempt under Code Section 501(c)(3).

B.    To receive and administer funds, to acquire, to own, to invest, to dispose of, and to deal with real and personal property and interests therein, and to apply gifts, grants, contributions, bequests and devises, and the income and proceeds thereof, in furtherance of the purposes of the Interfaith Community Church, with all the powers conferred upon it by the provisions of the Michigan Nonprofit Corporation Act (the "Act") and by the Articles of Incorporation and the bylaws of the Corporation.

Exhibit 3 to Objection to Removal and Motion to Remand

ARTICLE VI.

A.    Notwithstanding any other provisions of these Articles, the Interfaith Community Church shall not carry on any other activities not permitted to be carried on by a corporation exempt from federal income tax under Code Section 501(c)(3), or by a corporation, contributions to which are deductible under Code Section 170(c)(2).

B.    No part of the net earnings of the Interfaith Community Church shall inure to the benefit of, or be distributable to, its directors, officers or other private persons, except that the church shall be authorized to pay reasonable compensation for services rendered and to make payments in furtherance of the purposes set forth in Amendment I.

C.    No substantial part of the activities of the Interfaith Community Church shall be the carrying on or propaganda, or otherwise attempting to influence legislation (except as provided in Code Section 501(h)) and the Interfaith Community Church shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of (or in opposition to) any candidate for public office.

ARTICLE VII.

In the event of dissolution of the Interfaith Community Church, the Board of Directors shall cause the assets of the Interfaith Community Church to be distributed as follows:

A.    All liabilities of the organization shall be paid or adequate provisions shall be made for payment;

B.    All of the organization's remaining assets, real and personal, shall be distributed to the Port Huron Branch of the NAACP or its successor if its successor qualifies as an exempt organization under Code Section 501(c)(3). If the Port Huron Branch of the NAACP or a successor does not so qualify, then the organization's remaining assets shall be distributed to such charitable organization or organizations as are qualified as tax-exempt under Code Section 501(c)(3) as the church body shall determine. Any such assets not so disposed of, for whatever reason, shall be disposed of by order of the Circuit Court for the County of St. Clair, Michigan, to such organization or organizations as said court shall determine, which are organized and operated exclusively for charitable purposes.

ARTICLE VIII.

A.    To the full extent permitted by law, no volunteer director or board member of the Interfaith Community Church shall be personally liable to the corporation or its members for damages for breach of the director's or board member's fiduciary duty.

B.    To the full extent permitted by law, the Interfaith Community Church assumes all liability to any person other than the corporation or its members for all acts or omissions of a volunteer director or board member incurred in the good faith performance of his or her duties as a director or board member.

F:\smg\mvf\interfai.amd

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 3

# CONSTITUTION

EXHIBIT 3

Exhibit 3 to Objection to Removal and Motion to Remand

Article I
Name

The name of this corporation shall be Inter Faith Community
Church (dba Faith Christian Community Church)

Article II
Object, Purpose and Scope

The Inter Faith Community Church (dba Faith Christian
Community Church) shall be a free fellowship of Christian men,
women and children dedicated to the fulfillment of Christian
principles through common service for the common good. It seeks
to carry out the principles of Jesus in a cooperative way in all areas
of social, economic, and spiritual life.

Our golden texts are:

"I have come that they may have life, and have it more
abundantly." (John 10:10)

"The Lord is the Spirit; and where the Spirit of the Lord is, there is
liberty." (II Corinthians 3:17)

We believe that the chief purpose of religion is the search for those
universal truths, which will make men free.

We further believe that equal opportunity for physical, moral and
intellectual development is the inherent right of every human being
and we, therefore, dedicate ourselves to work toward that goal.

We affirm our faith in the Law of Love as the supreme law of the
individual and of society; a love that is an active expression of the
spirit of mutual understanding and good will, and which alone can
promote peace and establish harmony between people and nations.

Exhibit 3 to Objection to Removal and Motion to Remand



Inter-Faith Community Church (dba Faith Christian Community Church) invites all **people who are open to believing in Jesus** Christ, our Savior, and desire to see the coming of His Kingdom to share in its program, which is outlined as follows:

1. The public and private worship of God.
2. The **spiritual** education of children, youths and adults for the building of character.
3. Christian social service.
4. To bring people to a personal knowledge of Jesus Christ.
5. The development of a four-fold life; physical, social, mental and spiritual.
6. Total commitment of the total person to Christ, Christian stewardship (time, talent and means).

Article III
Membership
Section 1

Qualifications: All persons are eligible for membership in this church who shall publicly confess their faith in Jesus Christ as their Lord and Savior, and who believes that the Bible contains all the truths that are necessary for the complete salvation of man. They must believe in the brotherhood of all men. They must embrace the traditions of the said church – a singing, praying, tithing, teaching, serving and loving church.

Section 2

Reception: New members will be received during regular worship services. Candidates for membership must have completed the approved training class for new members. New members would be fellowshipped on the first Sunday of each month. All new members must be baptized or have been baptized.

Section 3

Exhibit 3 to Objection to Removal and Motion to Remand

4

Rights and Duties: It shall be the duty of every active member to support Inter-Faith Community Church (dba Faith Christian Community Church) by their prayers, presence, gifts and service; and by their acts and conduct to the best of their ability.

Section 4

Active Status:  To be considered Active, a member shall submit their offering utilizing an offering envelope, at least once a month. In addition, at least twice a week, they shall attend one of the teaching opportunities (Sunday School, Advanced Scholars, Bible Study or Sunday Service), **update his/her membership information with the Steward Board at least once within each calendar year and have successfully completed New Members Class.**  It is expected that within six (6) months of membership, they become engaged in a church auxiliary.  **(This action excludes any home-bound members).**

Article IV
Form of Government
Section 1

A. This church, incorporated under the laws of the State of Michigan, shall be governed by the majority vote of the active members present and voting at any annual, quarterly or special Church Meeting. Any exception to the majority vote rule must be specifically set forth in this constitution.

B. The Senior Minister shall be the Chief Executive Officer of the Church.

C. The direction of the church activities shall be the responsibility of the Senior Minister, The Board of Stewards, The Board of Trustees, commissions and the committees duly appointed for this purpose.

D. The membership shall act through its duly elected or appointed Boards. (Steward and Trustee Board)

E. An individual member, or a group of members, may request that a proposal be presented to a Church Meeting by first submitting the proposal in writing to either the

Exhibit 3 to Objection to Removal and Motion to Remand

5

Board of Stewards or the Board of Trustees, whichever Board has jurisdiction in the matter. The Board receiving such a written request and proposal shall review the proposal, attach the Boards written recommendation and submit both the proposal and the recommendation for consideration at the next Church Meeting.

**Authority for church government shall be vested in the Senior Minister, Board of Trustees and the Steward Board.** The active members present at a Church Meeting shall constitute a quorum for the purpose of transacting business. (A minimum of 50% of active membership)

Section 2

The church year shall be from January 1 through December 31. All church auxiliaries and ministries must file their annual reports as soon as possible after January 1, but at least 48 hours prior to the 1st Quarterly meeting. The church fiscal year shall be the calendar year.

Section 3

A. The Church Meeting shall be composed of the active members of the Inter-Faith Community Church (dba Faith Christian Community Church) who are eighteen (18) years of age or over. Once each quarter of the fiscal year, the church with the Pastor, or his designee, presiding shall assemble and hold a review of the work of the entire church for the past three (3) months.

B. Quarterly reports from all Ministers, Board of Trustees, Board of Stewards, Ministries and Auxiliaries shall be made at this meeting.

C. In addition to the annual Church Meeting, a quarterly meeting shall be held in April, July and October for the purpose of reporting on and reviewing the affairs of the church and to act on any matters that may properly be brought before the membership.

Section 4

Exhibit 3 to Objection to Removal and Motion to Remand

6

The Election meeting shall be held in December. The order of business for this meeting shall include:

A. Election of:
   1. Members to the Board of Trustees
   2. Church Treasurer
   3. Financial Secretary
   4. Recording Secretary
   5. Auxiliaries and Ministries

B. Confirmation of:
   1. Members of the Board of Stewards
   2. Superintendent of Sunday School
   3. Assistant to the Superintendent of the Sunday School
   4. Commission of Stewardship and Evangelism
   5. Commission on Education
   6. Any other commissions or committees that are deemed appropriate

Section 5

Reports from:

A. All other Church Ministries required to make annual reports.

Presentation of:

A. The Budget for the new fiscal year, along with a comparative report from the Trustees.
B. Any other business that may be properly presented to the membership.

The Senior Minister or his designee shall preside at all Church Meetings. Robert's Rules of Order shall be followed for the orderly transaction of business.

Exhibit 3 to Objection to Removal and Motion to Remand

The Senior Minister or the Board of Trustees or Stewards may call special meetings. Notice of a special meeting must be published in the church bulletin for at least two (2) successive Sundays immediately preceding the special meeting. The notice must set forth the nature of the business to be transacted at the special meeting. No other business may be transacted at the special meeting, except that specifically set forth in the meeting notice. (Unforeseen extenuating circumstances, relative to church existence, may preclude the two (2) week stipulation)

7

Article V
Ministers
Section 1

Full Time Minister:

A. Candidates for the position of the Senior Minister shall have the qualifications as prescribed in Article V, Section 2.

B. Choice of the Senior Minister shall be by a ¾ vote of the active church members attending a meeting called for that purpose, in accordance with Article VII, Section 1c and 1d.

C. The Senior Minister shall then be the Chief Executive Officer of the Church. They shall be responsible for the pastoral care of the congregation. They shall perform the customary duties of a pastor.

D. They shall be furnished with an adequate staff to assist them. Selection and dismissal of staff should be made at the recommendation of the Senior Minister, subject to the approval of the proper Boards.

E. They shall be a non-voting ex-officio chairman of all the Boards, Ministries and Auxiliaries of the Church and they shall consult with them in the furtherance of the government and program thereof.

F. Removal of a staff Minister is solely the Senior Minister **and Steward Board's responsibility through a vote for removal.**

Exhibit 3 to Objection to Removal and Motion to Remand

8

## Section 2

Qualifications for a Full Time Senior Minister:

A. They must be a graduate of an accredited institution with theological training and/or they must have a satisfactory pastoral experience or equivalent training that meets the approval of the Pastoral Search Committee.

B. The Pastoral Search Committee should provide Job description and general duties.

## Section 3

Removal of the Senior Minister

A. Action to remove the Senior Minister shall be initiated by the petition signed by not less than fifteen (15%) percent of the active members of the Inter-Faith Community Church (dba Faith Christian Community Church). The petition shall contain a clear and concise statement of the charges upon which the proposed removal of the Senior Minister is based. The petition shall designate a committee of not more than five (5) persons who shall be authorized to represent the petitioners.

B. The petition shall be submitted to the Chairman of the Steward Board. Within two (2) weeks after receipt of the petition, the chairman shall call a meeting of the Steward Board to discuss the charges. The chairman shall simultaneously present a copy of the petition to the Senior Minister.

C. The Chairman of the Steward Board shall advise the Senior Minister and the committee representing the petitioners of the date of the special meeting called to consider the charges. If at said special meeting a settlement of the matter is reached, the Chairman of the Steward Board will advise the congregation of the resolution of the charges at the next Church Meeting.

Exhibit 3 to Objection to Removal and Motion to Remand

9

At said special meeting the committee representing the petitioners, the Senior Minister, and the members of the Steward Board are unable to mutually resolve the charges, the Steward Board shall advise the Senior Minister of his right to reply to the charges in writing within ten (10) days after the date of said special meeting.

Upon receipt of the written reply, the Chairman of the Steward Board shall call a special meeting of the Stewards within ten (10) days to consider all the evidence submitted.

After careful consideration of all the facts and circumstances concerning the proposed removal, the Steward Board shall then make a written recommendation to a special Church Meeting called in accordance with the provisions of this constitution. The recommendation of the Steward Board shall be based upon a majority vote of their total membership. A written copy of the Board's recommendation shall be provided to the Senior Minister and the committee representing the petitioners. The Senior Minister and said petitioner's committee shall be afforded an opportunity to appear before the Church Meeting to present their positions relative to the proposed removal.

G. Action to remove the Senior Minister requires a 2/3-majority vote by secret ballot of those present and voting at the special Church Meeting. When it is voted to remove the Senior Minister in accordance with the foregoing procedure, the Chairman of the Steward Board shall declare the pulpit vacant. The Senior Minister shall be given thirty (30) days severance pay and a thirty (30) day notice to vacate the church parsonage (if occupied).

Section 4
Qualifications for Associate or Assistant Minister

A. They must be a graduate of a University or equivalent.
B. They must be a graduate of a Theological Seminary or equivalent training.
C. Steward Board, and Senior Minister) should provide Job description and general duties.

Exhibit 3 to Objection to Removal and Motion to Remand

Section 5

Qualifications for Staff Ministers

    A.  They must be a graduate of a University or equivalent.

    B.  They must hold a special certificate in his particular field or be qualified to serve in specified capacities. (Examples: Counselor, Director of Religious Education, Minister of Music, Minister of Administration, etc.).

Article VI
Board of Trustees
Section 1

    A.  The management of said corporation shall be vested in a Board of Directors which shall be called Trustees, consisting of not more the seven (7) persons; who shall be elected by a majority vote of all active members of said corporation. They shall be persons of good Christian character who have the welfare of the Church at heart.

    B.  It shall be the duty of the Board of Trustees to coordinate the Church's business activities so as to properly manage the temporal affairs of the Church.

    C.  The Board of Trustees shall meet at least once a month. At the January meeting, it shall elect a chairman, a vice chairman and a secretary. Their term of office shall commence immediately. The Board of Trustees shall prescribe its own procedure and adopt its own by laws, subject to the accepted limitations contained in this constitution and in Robert's Rules of Order.

    D.  It shall be the duty of the secretary of the board to keep a complete record of the proceedings of the Board of Trustees on file in the office of the church.

    E.  The Board of Trustees shall hold in a trust all property of the church. It shall buy, lease, rent, mortgage and sell all property only after obtaining approval of such proposed transaction from the majority of the members of the church

Exhibit 3 to Objection to Removal and Motion to Remand

attending a regular or special meeting called for that purpose in accordance with this constitution.

1. No indebtedness or obligation shall be incurred on behalf of the church, except under procedures prescribed by the Board of Trustees. However, indebtedness in excess of $5,000 shall not be incurred on behalf of the church without approval of a Church Meeting.

G. It shall be the responsibility of the Board of Trustees to be knowledgeable of the depository of all church funds.

H. It shall employ and dismiss or delegate the authority to employ and dismiss such persons, as shall be necessary employees of the church with approval of the Senior Minister; however, a majority of the members of the Board may carry the decision.

1. The term of office of each elective Board member shall be four (4) years and the term of ¼ thereof shall expire at each annual meeting. No senior board member shall serve two (2) successive terms. The immediate past Chairman of the Board shall serve as an ex-officio member for one (1) year following the expiration of his term. No member shall be eligible to be elected to the Senior Board. The only exception shall be that a member who is appointed to fill a vacancy, of an unexpired term, shall be eligible to succeed himself or herself for one (1) term.

J. The Chairman of the Board of Trustees may recommend to the Church Meeting the removal of any Trustee, with approval of the Board, who in their opinion is guilty of conduct unbecoming of a Christian.

## Section 2

## Trustee in Training

A. Trustees in Training shall consist of not more than seven (7) persons.

B. No member of the Trustees in Training shall have voting privileges on any contractual matter binding on the church

Exhibit 3 to Objection to Removal and Motion to Remand

12

but may participate in all other activities of the Senior Board with the exception of holding office.

Section 1

Vacancies

When a vacancy occurs on the Senior Trustee Board, the vacancy shall be filled from the list of nominees who were nominated but not elected to the board at the last election. This person shall be considered a Trustee in Training. Each succeeding vacancy shall be filled in the same manner from the nominees remaining on the list.

Article VII
Board of Stewards
Section 1

A. The Board of Stewards shall be appointed by the Senior Minister and confirmed by the Church Body at its annual meeting, for a standard term of 4 (four) years, to be reappointed yearly at the Senior Ministers discretion. No member of the Board of Steward shall serve more than two (2) successive terms. The immediate past Chairperson of the Board shall serve as ex-officio member of the Board for one (1) year following the expiration of his term.

B. The Board of Stewards shall have charge over all spiritual affairs of the Church and shall consist of not more than seven (7) persons. They shall be persons of good Christian character who have the welfare of the church and the Senior Minister at heart.

C. The Board of Stewards shall be responsible for forming the Pastoral Search Committee, composed of a total of eight (8) members as follows:

1-The Chairman of the Steward Board
1-Member of the Steward Board
1-The Chairman of the Trustee Board

Exhibit 3 to Objection to Removal and Motion to Remand

1 The Superintendent of Sunday School
1 The Church Treasurer
3 Members of the Church at Large

D. The Chairman of the Steward Board shall be the Chairman of the Pastoral Search Committee. When a vacancy occurs, this committee shall interview prospective applicants and submit their recommendations to the Steward Board. After proper consideration, the Steward Board shall submit their recommendations to the next regularly scheduled Church Meeting or a special meeting called for that purpose. The selection of the Senior Minister shall be on a ¾ majority vote of the active members in good standing, present and voting by secret ballot at the Church Meeting.

E. The other duties of the Steward Board shall include:

1. They shall keep accurate records of the church membership and assist the Senior Minster in visiting church members.
2. They shall provide the elements for the Lord's Supper and shall administer Communion.
3. They shall maintain records of all births, marriages and deaths. They shall make all necessary arrangements for Baptisms and shall perform all other duties customary to this office.

Section 2

A. It shall be the duty of the Steward Board to cooperate with the Senior Minister in administering to the spiritual interests of the Church and community.
B. The Senior Minister may suspend any Steward failing to perform the designated duties, or who shall be guilty of conduct unbecoming of a Christian.

Vacancies

Exhibit 3 to Objection to Removal and Motion to Remand

When a vacancy occurs in the Senior Steward Board, the          14
position shall then be appointed and/or filled at the discretion of
the Senior Minister.

Article VIII
Nominating Committee
Section 1

    A.  There shall be a Nominating Committee consisting of nine
        (9) active members of the Church.

        3-Members of the Trustee Board (appointed by the
        Chairman of the Board)

        3-Members of the Steward Board (appointed by the
        Chairman of the Board)

        3-Members at Large appointed by the Senior Minister

This committee shall be presented to and confirmed by the
members at the October Church Meeting.

    B.  The nominating committee shall serve for one (1) year
        following its confirmation. The Senior Minister shall
        appoint an interim chairman who shall call the first
        meeting, at which the committee shall elect a new
        permanent chairman.

    C.  It shall be the duty of the nominating committee to meet at
        least sixty (60) days prior to the annual Church Meeting for
        the purpose of nominating candidates to fill all elected
        offices. The committee shall place in nomination two (2)
        candidates for each office to be filled. When any vacancy
        occurs in any elected office, this committee shall nominate
        the candidates for the term of office to be filled, except as
        otherwise provided for in this consideration.

    D.  A list of persons nominated shall be published in the
        Church Bulletin at least two (2) successive weeks prior to
        the annual election.

Exhibit 3 to Objection to Removal and Motion to Remand

E. The Chairman of the Nominating Committee shall supervise the election and provide proper ballots for the election.

F. Nominating committee must keep accurate records of all meetings.

Article IX
Elections
Section 1

A. All elected officers will be elected by a majority vote of the active members present at the annual election.

B. Members to be elected will be elected from a list of nominees submitted by the nominating committee. Additional nominations by members, however, may be made to the Nominating Committee, after the initial publication of the proposed ballot.

Article X
Treasure
Section 1

Church Treasurer

There shall be a Church Treasurer. The Church Treasurer shall be elected in accordance with the provisions of this constitution. It shall be the duty of the Church Treasurer to administer the general treasury in accordance with standard accounting principles, practices and procedures. The Church Treasurer shall be properly bonded.

Article XI
Licensing and Ordination
Section 1

Exhibit 3 to Objection to Removal and Motion to Remand

Licensing

This Church may license a person as a Minister when he/she is recommended by the Senior Minister and approved by the Steward Board. The applicant must declare their intent to prepare themselves for ordination in the future by furthering their education in the direction of the qualifications for ordination stated herein.

Section 2

Ordination

A minister may be ordained by this Church, under the authority given in 2 Timothy 4:1-5, when he/she is a graduate of a recognized College and is a graduate of a recognized Theological Seminary, or has the equivalent of the Theological Seminary degree as determined by the Senior Minster and the Steward Board. There shall be a special service of the ordination planned and conducted by the Senior Minister.

Section 3

Lay Ministers

A person may be licensed as a Lay Minister when he/she is recommended by the Senior Minister and approved by the Steward Board. The applicant must receive instructions and directions from the Senior Minister. He/she shall then, after examination be granted restricted duties.

Article XII
Auxiliaries and Ministries
Section 1

A. Any group of persons wishing to form an Auxiliary or Ministry as a part of the church must obtain approval from

Exhibit 3 to Objection to Removal and Motion to Remand

the Financial or Trustee Board (depending on accumulation or cost base)

- These Auxiliaries and Ministries shall elect their own officers and shall be empowered to adopt their own by laws, which however shall not supercede or in any way contravene this Constitution.

- Election of officers of all Auxiliaries and Ministries shall be made annually and the results of the elections reported at the Annual Church Meeting.

- Any Auxiliary or Ministry failing to submit a quarterly financial report at the Church Meeting will be subjected to disciplinary action by the present body.

- All money raised by church Auxiliaries and Ministries in the name of Inter-Faith Community Church (dba Faith Christian Community Church), or in the name of the organization. These funds shall be kept in a bank, the Church Credit Union, or held by the Church Treasury in the name of the organization.

Article XIII
Powers of Delegates
Section I

    A.  Delegates chosen at the Church Meeting to represent the church in any meeting or convention, shall have no power to bind the church in any policy, definite course of action or financial obligation, unless the Church Meeting expressly grants such power.

    B.  All reports of delegates must be submitted to the next quarterly meeting and only that shall be submitted which is of value to the Church Meeting. Delegates of other organizations must report to their groups.

Article XIV
Amendments
Amendments to this Constitution may be proposed in accordance with procedure set forth in Article IV, Section 1, and Paragraph E. The proposed amendment shall become effective when approved

Exhibit 3 to Objection to Removal and Motion to Remand

by a three-fourths (3/4) vote of the active members attending the 13
Church Meeting.

Notice of the proposed amendment, or other revision of this
Constitution, shall be mailed to all members not less than fourteen
(14) days prior to the voting. Said notice shall also be printed in the
church bulletin for two (2) successive Sundays preceding the
Church Meeting.

Approved: 1/27/04

Effective: 1/27/04

Amended:

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 4

# ANNUAL UPDATE

EXHIBIT 4

Exhibit 3 to Objection to Removal and Motion to Remand



LARA Home   Contact LARA   Online Services   News   MI.gov

**Corporations Online Filing System**
Department of Licensing and Regulatory Affairs

ID Number: 800824756

Summary for: **INTER-FAITH COMMUNITY CHURCH - PORT HURON**

The name of the **DOMESTIC NONPROFIT CORPORATION**:   INTER-FAITH COMMUNITY CHURCH - PORT HURON

---

**Entity type:**   DOMESTIC NONPROFIT CORPORATION

**Identification Number:** 800824756   **Old ID Number:** 740120

**Date of Incorporation in Michigan:**   10/20/1971

**Purpose:** Ecclesiastical

**Term:**   Perpetual

**Most Recent Annual Report:** 2023         **Most Recent Annual Report with Officers & Directors:**   2023

---

**The name and address of the Resident Agent:**

| | | | | |
|---|---|---|---|---|
| Resident Agent Name: | LORI JOHNSON | | | |
| Street Address: | 1640 CLEVELAND AVE | | | |
| Apt/Suite/Other: | 1640 CLEVELAND AVE | | | |
| City: | PORT HURON | State: MI | Zip Code: | 48060 |

**Registered Office Mailing address:**

| | | | | |
|---|---|---|---|---|
| P.O. Box or Street Address: | 1640 CLEVELAND AVE | | | |
| Apt/Suite/Other: | 1640 CLEVELAND AVE | | | |
| City: | PORT HURON | State: MI | Zip Code: | 48060 |

---

**The Officers and Directors of the Corporation:**

| Title | Name | Address |
|---|---|---|
| PRESIDENT | CECILE SHOULDERS | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| PRESIDENT | LORI JOHNSON | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| PRESIDENT | TRAY SMITH | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| TREASURER | TRAY SMITH | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| TREASURER | LORI JOHNSON | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| TREASURER | CECILE SHOULDERS | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |

Exhibit 3 to Objection to Removal and Motion to Remand

| SECRETARY | CECILE SHOULDERS | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| SECRETARY | LORI JOHNSON | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| SECRETARY | TRAY SMITH | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| DIRECTOR | TRAY SMITH | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| DIRECTOR | LORI JOHNSON | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |
| DIRECTOR | CECILE SHOULDERS | 1640 CLEVELAND AVE 1640 CLEVELAND AVE PORT HURON, MI 48060 USA |

**Act Formed Under:**   327-1931 Michigan General Corporation Act

☐ **Written Consent**

**View filings for this business entity:**

ALL FILINGS
ANNUAL REPORT/ANNUAL STATEMENTS
ARTICLES OF INCORPORATION

**Comments or notes associated with this business entity:**

LARA FOIA Process    Transparency    Office of Regulatory Reinvention    State Web Sites

Michigan.gov Home    ADA    Michigan News    Policies

Copyright 2023 State of Michigan

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 5

# PURCHASE AGREEMENT

EXHIBIT 5

Exhibit 3 to Objection to Removal and Motion to Remand

# PURCHASE AGREEMENT

St. Clair County Community Mental Health Authority ("Purchaser") and Inter-Faith Community Church-Port Huron ("Seller") enter into this Purchase Agreement ("Agreement") for the Seller to transfer to the Purchaser property commonly known as 1640 Cleveland Avenue, Port Huron, Michigan 48060 – Parcel ID 74-06-151-0017-000 ("Property") on the terms and conditions contained in this Agreement.

1. _Consideration._ The Purchaser shall pay the Seller for the Property the sum of Five Hundred Thousand Dollars ($500,000.00) payable in cash or certified check at the Closing.

2. _Title Conveyed._ Title to the Property shall be conveyed at the Closing by warranty deed showing no exceptions except as the Purchaser allows under paragraph nine (9) below. The Seller shall pay any transfer tax on the deed.

3. _Closing._ The Closing of the sale shall take place at Huron Title, located at 330 Michigan St, Port Huron, MI within ten (10) days after all conditions precedent to Closing under this Agreement are satisfied.

4. _Possession._ The Purchaser shall receive possession of the premises as soon as the Closing is completed.

5. _Survey._ The Seller shall provide the Purchaser with a survey should one exist.

6. _Environmental Inspection._ Purchaser, at its sole cost and expense, shall have the right to perform environmental inspections to satisfy itself as to the condition of the Property. Such inspections must be completed within sixty (60) days of the date this Agreement is signed by both parties. Upon the completion of such environmental inspections, the property shall be restored to its exact condition as it existed prior to such inspections. Within such sixty (60) day period, the Purchaser shall notify the Seller of its decision on the acceptability of the environmental condition of the Property. The failure to provide such notice shall conclusively presume that the Property was acceptable and this condition has been waived. In the event the Purchaser finds the environmental condition of the Property unacceptable, as it may determine in its sole discretion, the Purchaser shall notify the Seller in writing within such sixty (60) day period and this Agreement shall be null and void. If a Phase 2 is required, Seller will allow for an extension to the agreement for an additional thirty (30) days to the due diligence period.

7. _Purchase in "As Is" Condition._ The Purchase of the Property including all buildings and improvements thereon is in "as is" condition and the Seller makes no representations as to the condition of the Property or the suitability of the Property for the Purchaser's use.

8. _Property Taxes._ The Seller shall pay any real property taxes that are due and payable by the date of the Closing, with proration. The Purchaser shall pay all real property taxes that are due after the date of the Closing. The Seller shall pay all assessments that are levied against

1

Exhibit 3 to Objection to Removal and Motion to Remand

the premises on or before the date of the Closing, whether due in installments or otherwise, at or before the Closing.

9. Title Insurance. At the Seller's expense, the Seller shall furnish the Purchaser with an owner's policy of title insurance in the standard American Land Title Association form, without the standard exceptions, certified to the date of the Closing, in the amount of the Purchase Price. Within fifteen (15) days after the effective date of this Agreement, the Seller shall provide the Purchaser with a commitment for the title insurance that shows that the Seller has good and marketable title. The Purchaser may raise any objections to the exceptions or encumbrances shown on the commitment within fifteen (15) days after the Purchaser receives the commitment by giving written notice to the Seller. If the Purchaser raises a title objection, the Purchaser shall not be required to close this transaction unless the Seller cures the objection or the Purchaser waives its objection. The Seller shall be required to cure the objection, if it is feasible to do so. The Seller shall take all reasonable action to remove the exception or the encumbrance from the chain of title, in order to remove it from the commitment and the policy. The title insurance policy shall include a tax lien search certified to the date of the Closing that shows no tax liens against the premises.

10.     Warranties by the Seller. The Seller warrants to the Purchaser and shall certify to the Purchaser at the Closing as follows:

a)     The Seller has full authority to enter into and perform this Agreement in accordance with its conditions, without breaching or defaulting on any obligation or commitment that the Seller has to any third parties.

b)     Except as disclosed in this Agreement, the Seller is not a party to any Agreement or otherwise bound under any obligation with any other party who has any interest in the premises or the right to purchase or lease the premises.

c)     Except as otherwise stated in this Agreement, the Seller's interest in the premises will be transferred to the Purchaser at the Closing.

d)     There are no suits, actions, or proceedings pending or, to the best of the Seller's knowledge, threatened by any party, including governmental authorities or agencies, against or involving the premises or to which the Seller is or may become a party in connection with the premises.

e)     The Seller has no notice or knowledge of

1)     any planned or commenced public improvements that might result in special assessments or otherwise directly and materially affect the premises;

2

Exhibit 3 to Objection to Removal and Motion to Remand

2)    any government agency or court order requiring repairs, alterations, or corrections of any existing conditions;

3)    any request by an insurer or a mortgagee of the premises requiring repairs, alterations, or corrections of any existing conditions.

f)    No improvements, repairs, or other construction has occurred on the premises within the one hundred twenty (120) days preceding the date of this Agreement. If any maintenance or repairs are undertaken on the premises between the effective date of this Agreement and the date of the Closing, the Seller shall provide full unconditional waivers of lien from each contractor, subcontractor, supplier, and laborer for all construction work.

11.    Warranties by Purchaser. The Purchaser warrants to the Seller and shall certify to the Seller at the Closing as follows:

a)    That Purchaser is a duly established governmental entity, a mental health authority in good standing with the State of Michigan.

b)    That the individual signing on behalf of the Purchaser has full authority, subject to St. Clair County Community Mental Health Authority Board of Directors approval to enter into and perform this Agreement in accordance with its conditions, without breaching or defaulting on any obligation the Purchaser.

12.    Survival of Warranties. The warranties of the parties to this Agreement shall survive the Closing.

13.    Conditions precedent for Performance by Purchaser. The obligation of Purchaser to consummate the sale contemplated by this Agreement is subject to the fulfillment or waiver of the following conditions before Closing. Any waiver of such conditions must be in writing signed by the Purchaser.

a)    Each of the Seller's warranties shall be true as though made again on the Closing date and no warranty shall be breached before the closing.

b)    The Seller shall perform and comply with all its obligations under this Agreement by the Closing.

3

Exhibit 3 to Objection to Removal and Motion to Remand

c)      There shall be no material adverse change in the condition of the Property and no encumbrance on the title to the Property except as are otherwise acceptable to the Purchaser.

d)      No action or proceeding to restrain, prohibit, or declare illegal the transaction contemplated by this Agreement shall be pending or threatened. No order restraining or prohibiting the transaction contemplated by this Agreement shall be issued by any public authority, governmental agency, or court. No attachments, garnishments, levies, or liens shall be filed or in effect regarding the transaction contemplated by this Agreement, the premises.

e)      The Purchaser shall determine that, in its sole judgment, it is feasible to use the Property for the purposes intended by the Purchaser after an examination of the easements on the Property, the condition of title, an examination of the buildings and improvements on the Property and all other aspects of this transaction. The examination of the building and improvements on the Property shall be permitted by Seller and shall be completed by Purchaser within sixty (60) days after the execution of this Agreement by both parties.

f)      The Purchaser's satisfaction with the results of all surveys, inspections, reports, appraisals, and environmental assessments commissioned by itself or otherwise required by this Agreement. However, if the Purchaser does not notify the Seller within sixty (60) days of the receipt of such surveys, reports, appraisals and assessments of any unsatisfactory conditions, then this condition shall be deemed to have been satisfied.

g)      Satisfactory review of all aspects of this transaction by Purchaser's legal counsel within sixty (60) days after the execution of this Agreement by both parties.

h)      Purchaser's satisfactory procurement of all necessary permits, site plan approvals and/or zoning approval, from any municipality as required for Purchaser's intended project within sixty (60) days after the execution of this Agreement by both parties.

i)      The Purchaser's procurement of satisfactory financing for the purchase price within sixty (60) days after the execution of this Agreement by both parties. Financing shall be deemed satisfactory pursuant to this paragraph only at Purchaser's sole discretion.

4

Exhibit 3 to Objection to Removal and Motion to Remand

j)      Purchase is contingent upon final approval by the St. Clair County
        Community Mental Health Board of Directors within sixty (60)
        days of execution of this Agreement by both parties.

14.     Conditions Precedent to Performance by Seller.  The obligation of the
Seller to consummate the sale contemplated by this Agreement shall be subject to the fulfillment
of the following conditions before the Closing.  The Seller may waive these conditions in
writing.

a)      Each of the Purchaser's warranties shall be true as though made
        again on the Closing date, and no warranty shall be breached
        before the Closing; and

b)      The Purchaser shall perform and comply with all its obligations
        under this Agreement by the Closing.

15.     Termination.  If either the Purchaser or the Seller is not obligated to
complete this Agreement because a condition precedent is not met, that party may terminate this
Agreement by notifying the other party of the intention to terminate this Agreement and the
reason.  The purchaser or the Seller may waive any obligations of the other party without
prejudicing the right to subsequently assert other conditions or to make a claim against the other
party for the breach of a condition or warranty.

16.     Amendments.  This Agreement may be amended only by a written
document signed by each of the parties to this Agreement.

17.     Successors and assigns.  This Agreement shall bind and benefit the parties
and their successors and assigns.

18.     Governing Law and Venue.  This Agreement shall be construed in
accordance with and governed by Michigan laws.  Any actions concerning this Agreement shall
be brought in St. Clair County, Michigan.

19.     Notices.  Any notices required by this Agreement shall be served
personally or by registered mail, certified receipt requested, to the party for whom it is intended
at the address listed at the beginning of this Agreement.

20.     Effective Date.  This Agreement shall be effective when all the parties
listed below have signed this Agreement. This offer is valid and shall expire August 31, 2023 at
5:00pm.

21.     Agency Disclosure and Commission. Purchaser and Seller understand that
there is an agency relationship with regard to this transaction; Kramer Commercial Realty is

5

Exhibit 3 to Objection to Removal and Motion to Remand

working as the Buyer's Agent. Any commission due will be the responsibility of the Purchaser per a separate agreement.

22.   Earnest Money Deposit.  Purchaser is depositing with Broker Five Thousand Dollars ($5,000.00) in the form of a check, money order, cashier's check or certified funds, within 3 days of acceptance by Seller.  Total sums deposited will be deemed the Earnest Money Deposit to be held in accordance with the laws of the State of Michigan and applied to the purchase price at closing.  The Earnest Money Deposit shall be disbursed ONLY in accordance with either: (a) the terms hereof; (b) a fully executed mutual release; or (c) until a civil action has determined to whom the deposit must be paid.

WITNESSED:

*Tracey Pington*

Purchaser: St. Clair County Community Mental Health Authority

By: _____
Its: Debra Johnson, Chief Executive Officer
Dated: 8-21-2023

WITNESSED:

*Kobi Krum*

Seller: Inter-Faith Community Church-Port Huron

By: _____
Its: Cecile Shoulders
Dated: 8/24/23

By: _____
Its: Lori Malcolm
Dated: 8/24/23

By: _____
Its: Christine Ballyer
Dated: 8-24-23

6

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 6

# SWORN AFFIDAVITS

EXHIBIT 6

Exhibit 3 to Objection to Removal and Motion to Remand

STATE OF MICHIGAN
IN THE 31ˢᵗ CIRCUIT COURT FOR ST CLAIR COUNTY

TRAY SMITH
Individually and on behalf of
INTERFAITH COMMUNITY CHURCH
d/b/a FAITH CHRISTIAN COMMUNITY CHURCH
    A Michigan nonprofit corporation
    **Plaintiffs**

                    Case No. 2023- 001779-NZ

        v.

                    Hon. Michael West

CECILE SHOULDERS
JOHN DOE 1-5
ST CLAIR COUNTY COMMUNITY MENTAL
HEALTH
    **Defendants**

---

Jeffrey Z. Dworin (P53481)
Attorney for Plaintiff
7125 Orchard Lake Rd – Ste 306
West Bloomfield MI 48322
248-322-9900

Gerrow D Mason (P59065)
Gerry Mason Law Offices PLLC
Co-counsel for Defendants
1700 Busha Hwy
Marysville MI 48040
810-989-0057
gdblues@yahoo.com

---

## SWORN AFFIDAVIT OF TRAY SMITH

    **NOW COMES** Affiant, TRAY SMITH, and in support of his SWORN AFFIDAVIT

now states:

1. My name is Tray Smith and I serve as Lead Pastor of Inter-Faith Community Church,

    located at 1640 Cleveland Ave., Port Huron, Michigan 48060.

2. That our church shares a parking lot with Community Mental Health.

Exhibit 3 to Objection to Removal and Motion to Remand

3. That I communicate regularly with Community Mental Health on a variety of issues.

4. That I notified Community Mental Health leaders Tracey Pingitore that the people attempting to sell the church were not in a position of authority to take such action.

5. That I gave notice to Carissa Kramer of Kramer Real Estate, and to Tracey Pingitore at Community Mental Health prior to said parties entering into a real estate purchase agreement that the church did not want to sell its property, and the people attempting to do so had no authority under church by laws.

6. Contrary to our communications, Community Mental Health, church non board members, and Kramer Real Estate went ahead and executed the purchase agreement for church property.

7. At this time, we do not wish to sell the church, and do not have the board authority to do so.

8. My statements are based on personal experience and observations, and are true to the best of my knowledge and belief, so help me God.

I SWEAR AND AFFIRM THAT THE ABOVE ARE TRUE TO THE BEST OF KNOWLEDGE AND BELIEF SO HELP ME GOD.

Date: 9 | 26 | 2023 (M)

_____
TRAY SMITH
Affiant

On this 26th day of September 2023, TRAY SMITH appeared before me with proper identification, being duly sworn to tell the truth, the whole truth, and nothing but the truth so help you God, executed the above stated sworn affidavit.

BEATA J. DEBROWSKI
NOTARY PUBLIC STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires 7/25/2027
Acting in the County of _____

2

Exhibit 3 to Objection to Removal and Motion to Remand

STATE OF MICHIGAN
IN THE 31st CIRCUIT COURT FOR ST CLAIR COUNTY

TRAY SMITH
individually and on behalf of
INTERFAITH COMMUNITY CHURCH
d/b/a FAITH CHRISTIAN COMMUNITY CHURCH
     A Michigan nonprofit corporation
    **Plaintiffs**

                    v.

CECILE SHOULDERS
JOHN DOE 1-5
ST CLAIR COUNTY COMMUNITY MENTAL
HEALTH
    **Defendants**

Case No. 2023- 001779-NZ

Hon. Michael West

---

Jeffrey Z. Dworin (P53481)
Attorney for Plaintiff
7125 Orchard Lake Rd – Ste 306
West Bloomfield MI 48322
248-322-9900

Gerrow D Mason (P59065)
Gerry Mason Law Offices PLLC
Co-counsel for Defendants
1700 Busha Hwy
Marysville MI 48040
810-989-0057
gdblues@yahoo.com

---

## SWORN AFFIDAVIT OF LORI JOHNSON

    NOW COMES Affiant, LORI JOHNSON, and in support of his SWORN AFFIDAVIT

now states:

1. That my name is Lori Johnson,

2. I serve as Inter-Faith Church Community Church Treasurer and Registered Agent.

3. On multiple occasions, I have communicated with Community Mental Health.

1

Exhibit 3 to Objection to Removal and Motion to Remand

4. Our church and Community Mental Health share a parking lot.

5. Prior to Community Mental Health entering into a purchase agreement to buy our church, I advised them that the people attempting to sell the church were no longer board members and did not have authority to do so.

6. Both Community Mental Health and Kramer Real Estate knew or should have known based on firsthand information from me and Pastor Smith that the people attempting to sell the church had no authority to do so.

7. Against our advice, shared information, and the church congregation wishes, Community Mental Health, Karmer Real Estate, and several church members, attempted to sell the church to Community Mental Health.

8. My statements are based on personal experience and observations and are true to the best of my knowledge and belief, so help me God.

I SWEAR AND AFFIRM THAT THE ABOVE ARE TRUE TO THE BEST OF
KNOWLEDGE AND BELIEF SO HELP ME GOD.

Date: 9/28/23

_____
LORI JOHNSON
Affiant

On this 28th day of September 2023, LORI JOHNSON, appeared before me with proper identification, being duly sworn to tell the truth, the whole truth, and nothing but the truth so help you God, executed the above stated sworn affidavit.

_____

BEATA J. DEBROWSKI
NOTARY PUBLIC -STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires 7/25/2027
Acting in the County of _____

2

Exhibit 3 to Objection to Removal and Motion to Remand

# EXHIBIT 7

# RECORDS OF MEMBERSHIP MEETING

EXHIBIT 7

Exhibit 3 to Objection to Removal and Motion to Remand



**Faith Christian**
Community Church

1640 Cleveland Avenue • Port Huron, MI 48060
Phone (810) 985-5555 • Fax (810) 984-4683 • www.faithchristiancc.com

Quarterly Church Meeting

October 8, 2023

Be it resolved, The active members of Faith Christian Community Church met on October 8, 2023, at 12pm for its quarterly meeting. During the meeting, two motions were made and passed in accordance with its constitution as well as state law. Motion one: To suspend the church trustee board members Cecile Shoulders and Lori Malcom for violations of article 3, section 4 (active member status), article 6, section J (Christian character), and article 6, Section F (initiating and chairing an illegal meeting). Neither Cecile Shoulders nor Lori Malcom have authority to operate as FCCC Church trustee board members as well are now considered inactive members due to this sanction. Therefore, Our Church trustee board authority shall be vested in our church treasurer and acting secretary, Lori Johnson, until the next quarterly church meeting.

Motion 2: The active members have voted to reject ANY AND ALL actions taken by these rogue actors and have placed an indefinite moratorium on any sale of its property.

This is to inform any state and business partners to no longer communicate, negotiation, or conduct business with these individuals (Cecile Shoulders and Lori Malcom) in the name of Faith Christian Community Church.

Tray Smith

Senior Pastor

10/8/23

Lori Johnson

Church Treasurer/Acting Secretary

Exhibit 3 to Objection to Removal and Motion to Remand

Sign In Sheet
Church Meeting 10-8-23

Lori Maked
Sandra C. Woodyard
Carfotte Sanders
Virginia Brady
_(illegible signature)_
Carolyn Misano-Weber
michael w. Johnson
Lori Johnson
Brenda Tanner
Shantell Smith
Pastor Tray Smith

Exhibit 3 to Objection to Removal and Motion to Remand